

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **KRYSTAL S. JOHNSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:11-cv-4333-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Krystal S. Johnson ("Johnson") brings this action pursuant to

section 1631(c)(3) of the Social Security Act ("the Act"), 42 U.S.C. § 1383(c)(3),

seeking review of the final adverse decision of the Commissioner of the Social

Security Administration ("SSA").  Doc. 1.  This court finds that the Administrative

Law Judge's ("ALJ") decision - which has become the decision of the

Commissioner - is supported by substantial evidence.  Therefore, for the reasons

elaborated herein, the Court will **AFFIRM** the decision denying benefits.

## I.  Procedural History

Johnson filed her application for Title XVI Supplemental Security Income

("SSI") on May 19, 2008, alleging a disability onset date of January 15, 2006, due to schizophrenia, bipolar disorder, depression, suicidal ideations, and having multiple personalities.  (R. 97, 128).  After the SSA denied her application on September 18, 2008, (R. 61-65), Johnson requested a hearing on September 20, 2008. (R. 66).  At the time of the hearing on May 18, 2010, Johnson was 26 years old with a ninth grade education.  (R. 39-59, 132).  Her past relevant work included working as a housekeeper and laundry attendant.  (R. 23, 129).  While Johnson maintained that she had not engaged in substantial gainful activity since May 2008, the ALJ questioned this assertion stating that evidence existed that Johnson performed work described as unskilled for three or four months on a full time basis in 2008.  (R. 16).

The ALJ denied Johnson's claims on July 28, 2010.  (R. 11-28).  Johnson appealed the decision on August 12, 2010 and presented arguments on September 9, 2011.  (R. 7, 153).  However, the Appeals Council issued a form denial on October 26, 2011, (R. 1), which made the ALJ's decision the final decision of the Commissioner.  Johnson then filed this action on December 27, 2011, pursuant to 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial

evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id*.  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

    Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield

automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals one listed by the Secretary;

(4)    whether the claimant is unable to perform his or her past work; and

(5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that Johnson "has arguably engaged in substantial gainful activity since May 19, 2008, the application date" because "[a]ccording to [Johnson's] own submissions, she performed work that was described by the vocational expert as unskilled for three or four months on a full time basis at substantial gainful activity levels in 2008 (Exhibits 3E, 3F, and 5F)." (R. 16). Nonetheless, the ALJ afforded Johnson the benefit of any reasonable doubt and found in her favor at Step One. *Id*. Next, the ALJ found that Johnson suffered from the severe impairments of "depressive disorder, anxiety disorder with post traumatic stress disorder, and borderline intellectual functioning (provisional)." *Id.* The ALJ then proceeded to the next step and found that Johnson failed to satisfy Step Three because she "does not

have an impairment or combination of impairments that meets or medically equals one of the listed impairments." (R. 16). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that:

> [T]he claimant has the residual functional capacity ["RFC"] to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, routine, repetitive tasks free of fast-paced production requirements. She can make simple work-related decisions and should have few, if any, changes in the work place. She should have no more than occasional interaction with the public and with coworkers.

(R. 18). Moreover, in light of the full range of work, "nonexertional limitations" RFC, the ALJ determined that Johnson is "capable of performing past relevant work as a housekeeper and a laundry attendant." (R. 23). Consequently, the ALJ found that Johnson "has not been under a disability, as defined in the Social Security Act, since May 19, 2008, the date the application was filed." (R. 24).

## V. Analysis

The court turns now to Johnson's contentions that the ALJ erred (1) in determining that Johnson "arguably" engaged in substantial gainful activity since her application date and by failing to analyze the actual earnings Johnson made to determine if her work rose to this level, (2) by failing "to make specific findings as to mental work related functioning" for Johnson's three mental disorder severe

impairments, (3) in assessing Johnson's RFC by "selectively adopting [a] State Agency reviewing opinion over [an] examining opinion and rejecting consistent opinions from both [a] treating and consultative source[]," and (4) by failing to develop the record by "obtain[ing] clarification from any of the treating or consultative sources" or by "utiliz[ing] a medical expert [] to assist [the ALJ] with resolving any insufficiencies or conflicts in the record."  *See* doc. 8, at 7-12.  The court addresses each contention in turn.

> A.   <u>Alleged error in substantial gainful activity determination and in failing to analyze Johnson's earnings</u>

Johnson contends that the ALJ erred in determining that Johnson engaged in substantial gainful activity since May 19, 2008, the date of her SSI application, and, in that same vein, erred by not using Johnson's earnings to determine if Johnson had, in fact, engaged in gainful activity.  Doc. 8 at 4-5.  As a threshold matter, the court notes that in Step One, the ALJ must determine if the claimant engaged in substantial gainful activity.  *See* 20 C.F.R. § 416.920(b).  If the ALJ answers the question affirmatively, the ALJ will find that the claimant is not disabled.  *See id.*  Substantial gainful activity is work activity that involves significant physical or mental activities and that is done for pay or profit.  *See* 20 C.F.R. § 404.1572.  The regulation further provides that work may be substantial

even if an individual does less, or has less responsibility than when she worked before. *Id.* Indeed, the focus is on the earnings rather than on the activity: "[i]n evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity." *See* 20 C.F.R. § 404.1574; Social Security Ruling (SSR) 83–33. Relevant to the dispute before this court is the Program Operations Manual System (POMS) DI 10501.015 Table 2 which indicates that average monthly income over $940.00 per month in 2008 qualified as substantial gainful activity. *See Stroup v. Barnhart,* 327 F.3d 1258, 1262 (11th Cir. 2003) ("While the POMS does not have the force of law, it can be persuasive.").

Turning to the relevant facts here, although the court agrees that Johnson had no substantial gainful activity after the May 19, 2008 date of her application,[1] Johnson, however, engaged in substantial gainful activity from April 2008 to May 6, 2008, *i.e.*, after her alleged disability onset date of January 15, 2006. *See* (R. 128-129). Indeed, although Johnson has no reported wages from 2004 through

---

[1]Exhibits 3E, 3F, and 5F which the ALJ cites as evidence that Johnson engaged in SGA since May 19, 2008 simply do not support that contention. Exhibit 3E is a Disability Report where Johnson reported she worked as a housekeeping/laundry attendant at a hotel from April 2008 to May 6, 2008. (R. 129). Exhibit 3F is the consultative examination report of Dr. Chebon Porter who noted that Johnson reported last working in May 2008. (R. 169). Finally, Exhibit 5F is the consultative examination report of Dr. Jon Rogers who noted that Johnson last worked as a laundry attendant and housekeeper at Holiday Inn Express from February to May, 2008. (R. 175).

2006 and only $163.48 in wages for 2007, she earned $2439.64 in 2008 when she

worked from April 2008 to May 6, 2008.  (R. 102, 104, 129).  Consequently,

under POMS, Johnson's work in 2008, at least in April, qualifies as substantial

gainful activity.  Therefore, the ALJ committed no reversible error, especially

since the ALJ gave Johnson "the benefit of any reasonable doubt...and proceed[ed]

to the remaining steps of the process."  (R. 16).

> B.   Alleged failure to make specific findings as to mental work related
>      functioning per SSR 96-8p and 20 CFR 416.945

Johnson contends next that, in violation of SSR 96-8p[2] and 20 C.F.R.

416.945(c)[3], the ALJ failed "to make specific findings as to mental work related

functioning" concerning the three severe impairments of  "depressive disorder,

anxiety disorder with post traumatic stress disorder, and borderline intellectual

functioning (provisional)" that the ALJ determined Johnson suffered.  (R. 16);

doc. 8 at 7.  Contrary to Johnson's contention, the ALJ made specific findings

---

[2]SSR 96-8p states that "[w]ork-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, pg. 5.

[3]20 C.F.R. 416.945(c) discusses how an ALJ must use a claimant's "mental abilities" in an RFC assessment, i.e. "assess the nature and extent of [a claimant's] mental limitations and restrictions and then determine [the claimant's] residual functional capacity for work activity on a regular and continuing basis [as well as] limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting."  20 C.F.R. 416.945(c).

related to Johnson's mental capacity to engage in work-related functions.

Specifically, after noting that Johnson could "perform a full range of work at all

exertional levels," the ALJ then found Johnson's nonexertional limitations, stating

that Johnson "can perform simple, routine, repetitive tasks free of fast-paced

production requirements.  She can make simple work-related decisions, and should

have few, if any changes in the work place.  She should have no more than

occasional interaction with the public and with coworkers."  (R. 18).  In doing so,

the ALJ addressed the "work-related mental activities" mentioned in sections  20

C.F.R. 416.945(c) and SSR 96-8p.

Moreover, in reaching the RFC determination, the ALJ relied on several

medical opinions and objective findings.  For instance, the ALJ noted that several

doctors assessed Johnson's I.Q. (79 in 2006, 80 in 2008, and 75 in 2010) and GAF

(57 in 2007, and 42 and 51 in July and September 2008, respectfully) and

determined that Johnson's intellectual abilities fell within the borderline range.

(R. 19-21).  In addition to the IQ and GAF assessments, William Beidleman,

Ph.D., conducted a psychiatric consultative examination in February 2007 and

observed that Johnson "did not appear overly anxious, depressed, psychotic or

manic."  (R. 19-20, 314).  Eighteen months later, Jon Rogers, Ph.D., conducted a

psychological evaluation and opined that Johnson "was able to function

independently." (R. 20, 178).  The next psychological evaluation occurred in May 2009 when Robert Savage, Ph.D., administered several tests and noted no "sensory or motor impairment that would have impacted [Johnson's] performance." (R. 21, 238).  Critically, Dr. Savage stated that Johnson's personality and her emotional functioning profile tests indicated "grossly exaggerated symptom reporting" and "some symptom magnification of her psychiatric symptoms," and that Johnson's responses "were not indicative of current psychosis, acute depressive symptoms, or suicidiality." (R.  21, 238).

Overall, based on the record, the ALJ determined that Johnson's severe impairments of depressive disorder, anxiety disorder with post traumatic stress disorder, and provisional borderline intellectual functioning did not prevent her from performing her past work as a housekeeper and a laundry attendant, taking into consideration Johnson's nonexertional limitations.  Because Johnson failed to show what "specific findings" the ALJ should have made regarding Johnson's mental work-related functioning, and how these findings would have changed the ultimate result, the substantial evidence supports the ALJ's RFC determination.

C.   Alleged error in adopting state agency reviewing opinion over examining opinion and rejecting opinions from a treating and consultative source

Johnson contends next that the ALJ erred by giving "great weight" to state

agency consultant Dr. Gordon Rankart's reviewing assessment over other
examining opinions and in finding consultative examiner Dr. Chebon Porter's
assessment and non-physician, treating source Ms. Sharon Harper's questionnaire
assessment inconsistent with the other record evidence.  *See* doc. 8 at 7-12.  As a
threshold matter, the regulations make clear that the responsibility for assessing
the RFC falls on the ALJ.  20 C.F.R. § 416.946.  In determining whether a
claimant is disabled, the ALJ "will always consider the medical opinions in [the]
case record together with the rest of the relevant evidence [he] received," 20
C.F.R. 404.15279(b), and "may reject any medical opinion if the evidence
supports a contrary finding," *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir.
1987).

    Here, consistent with 20 C.F.R. 404.15279(b), the ALJ reviewed medical
reports and evidence from five psychiatric and psychological doctors, *see
generally* (R. 14-24), and weighed the opinions of the examiners based on the
entire case record.  Based on the record, the ALJ gave "significant" or "great"
weight to the opinions of Drs. Rogers, Rankart, Savage, and Beidleman, three of
whom examined Johnson in person, and gave partial weight to the findings and
opinions of Dr. Porter.  (R. 22-23).  Finally, while the ALJ gave no weight to the
opinions non-physician therapist Sharon Harper expressed in the questionnaire, he

did consider her treatment notes.  (R. 21-23).

In light of Johnson's contention that the ALJ erred in assigning weight to the medical evidence, the court reviews each physician's or therapist's opinion below.

### i. Dr. Rankart's reviewing opinion

Johnson contends that the ALJ erred in giving "great weight" to the state agency consultant Dr. Gordan Rankart's reviewing opinion over other examining and treating opinions.  Doc. 8 at 8.  However, while the ALJ gave "great weight" to Dr. Rankart's Mental RFC and his opinion in his Psychiatric Review Technique Form, the ALJ did not give Dr. Rankart's reviewing opinions greater weight than the examining opinions.  (R. 23).  In fact, the ALJ gave "great weight" to the May 27, 2009 examining opinion of Dr. Savage, "significant weight" to the September 11, 2008 examining opinion of Dr. Rogers, "great weight" to the February 23, 2007 examining opinion by Dr. Beidleman, and "partial weight" to the July 10, 2008 examining opinion of Dr. Porter.  *See* (R. 14-24).  There is no indication that the ALJ weighed Dr. Rankart's review of Johnson's record greater than the examining opinions on record.  To the contrary, the ALJ referred to the examining opinions a great deal more than Dr. Rankart's opinion, and, in fact, only discussed Dr. Rankart's review in two sentences.  *See* (R. 23, 14-24).  In short, the court

finds no error in the weight the ALJ gave to Dr. Rankart's reviewing opinion.

> ii. *Non-physician Sharon Harper's treatment opinions from Birmingham Health Care*

Johnson also contends that the ALJ should have considered and given greater weight to the treating opinion of non-physician therapist Sharon Harper. Doc. 8 at 8-12.  Ms. Harper opined in a questionnaire on December 10, 2009 that Johnson had marked[4] restrictions and difficulties with her "activities of daily living," with "maintaining social functioning," with "concentration, persistence, [and] pace," and with her "ability to respond to customary work pressures."  (R. 241-242).  Johnson claims this opinion supports her disability.  While the court recognizes that "[m]edical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to special significance and may be entitled to controlling weight," that is the case only if "a treating source's medical opinion. . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record [should] the adjudicator give it controlling weight." SSR 96-8p, pg.6-7 (citing SSR 96-2p and 96-5p).  Moreover, mental health therapists, such as Ms. Harper, are not "acceptable" medical sources as defined in

---

[4]The questionnaire defined "marked" as "[a]n impairment which seriously affects ability to function." (R. 241).

20 C.F.R. 416.913(a), and, instead, are recognized as "other" sources whose testimony may be used to show the severity of a claimant's impairment or how it affects her ability to work.  20 C.F.R. 416.913(d).

The lack of support in the medical record is the fatal flaw in Johnson's reliance on Ms. Harper's opinions.  As the ALJ pointed out, although he considered Ms. Harper's treatment notes, he did not consider the opinion Ms. Harper provided in her questionnaire because (1) it was "wholly inconsistent with the contents of the letters and records detailing [Johnson's] treatments," (2) it was "set forth on a check-off form supplied and drafted by [Johnson's] attorney," and (3) it "fails almost entirely to provide any clinical or objective support for the conclusory assertions indicated thereon."  (R. 23).  Specifically, while Ms. Harper opined that Johnson had marked limitations, the details she provided in an accompanying letter contradicted her opinion, *i.e.*, (1) that when Johnson returned for her first follow-up visit she "showed improvement, reporting no suicidal ideation and lessening of the auditory hallucinations," (R. 240), (2) on another follow-up visit, Johnson "reported her mood was stable, and she was sleeping better at that time," (R. 240), (3) during two subsequent visits Johnson reported "improvement in symptom reduction had continued" and "improved depression symptoms, more energy, and no hallucinations."  (R. 318).  These entries formed

the basis for the ALJ's determination that Ms. Harper's treatment notes showed "[Johnson] repeatedly reports improving symptoms, which is inconsistent with a finding of any marked limitations." (R. 23). In other words, Ms. Harper failed to reconcile the inconsistences between her questionnaire and her treatment notes.

The ALJ also found that Ms. Harper's opinion was not supported by the evidence. *See* (R. 17-23). For example, the ALJ determined that Johnson's reports that she cooked and cleaned for her husband, including washing the dishes, sweeping, mopping the floor, and cleaning the bathroom, that she goes to the library, attends church services, and uses food stamps and shops for food weekly contradicted Ms. Harper's contention that Johnson had marked restrictions in her ability to handle activities of daily living. (R. 17, 19, 120-121). Likewise, the ALJ found that the evidence showing that Johnson "has married since her alleged onset date of disability," "was cooperative and generally motivated in her consultative examinations," and "presented to her consultative examinations as a pleasant and cheerful person. . . [with] spontaneous speech, normal articulation, and normal conversation" contradicted Ms. Harper's opinion that Johnson had marked limitations in social functioning. (R. 17). Finally, while Ms. Harper opined that Johnson had marked restrictions with her ability to respond to customary work pressures, the ALJ rejected this finding, (R. 18), based on the

medical opinions in the record, including Dr. Rankart who opined that Johnson "is capable of simple-task employment," (R. 192), and Dr. Rogers who opined that Johnson could "function independently," (R. 178).  Thus, the ALJ concluded that Johnson "appears to have some restrictions, but she is still capable of performing a number of activities of daily living; therefore, the undersigned finds [Johnson] has moderate restrictions," moderate difficulties in ability to function socially, and "some difficulties with maintaining concentration, persistence, and pace; [but Johnson's] limits in this domain are no more than moderate, consistent with her abilities to complete tests and remain on tasks during tests."  (R. 17-18).  As such, the ALJ found that while "the entire world of work is not open to [Johnson]" due to her noted limitations, "she retains sufficient capacity to perform her past work as a housekeeper and as a laundry attendant because the requirements of these jobs fall well within the functional capacity outlined." (R. 23).

Based on the evidence in the record and the inconsistencies between Ms. Harper's treatment notes and her questionnaire, the court finds that the substantial evidence supports the ALJ's rejection of Ms. Harper's opinion.

### iii. Dr. Porter's consultative examination opinion

Next, Johnson contends that the ALJ erred in only giving partial weight to the opinions of Chebon Porter, Ph.D., a licensed clinical psychologist consultative

source who examined Johnson on July 10, 2008.  (R. 169).  The ALJ found Dr.

Porter's findings and opinions "inconsistent with the record" and overly

influenced by Johnson's statements and claims, rather than Dr. Porter's own

independent evaluation.  (R. 22-23).  Indeed, as it relates to Johnson's psychiatric

history, Dr. Porter relied heavily on Johnson's reports.  *See* (R. 170).  In fact, Dr.

Porter's entries include multiple references to what Johnson reported: (1) "Ms.

Johnson <u>reported</u> the following history," (2) "[p]er trauma-related issues,

[Johnson] <u>reported</u> the following. . . regularly have nightmares, flashbacks,

intrusive thoughts, emotional detachment, chronic anxiety, distress with exposure

to trauma-relates cues, distrust of others (i.e., only trusts her husband), and severe

anger control problems...she <u>reported</u> a long history of physical altercations. . . and

although she continues to have issues with emotions consistent with severe

anger/range, she has not acted out [] in approximately 3 years," and (3) "Johnson

also <u>reported</u> a history of severe depression [with] a history of approximately 6-7

suicide attempts via cutting her wrists...<u>Per her description</u>, she has a very limited

ability to manage stress or conflict, both of which trigger acute decompensation

into severe depression; SI's, hopelessness, agitation, worthlessness, shame,

tearfulness, and eventual hypersomnia."  (R. 170) (emphasis added).  Ultimately,

Dr. Porter diagnosed Johnson with Posttraumatic Stress Disorder (chronic/severe),

major depressive disorder (recurrent/unspecified), alcohol dependence, cocaine

dependence (in sustained full remission), cannabis dependence (in sustained full

remission), and borderline intellectual functioning (provisional).  (R. 171).  He

concluded that "[Johnson] does not appear to be capable of managing routine work

stress/tasks or working cohesively with others sufficient to maintain gainful

employment.  She does appear to be capable of managing benefits independently

(i.e., per her report, she's managed finances and paid bills throughout her

relationship and marriage to her husband).  Her prognosis is guarded."  (R. 171).

Johnson contends that Dr. Porter's finding that she is incapable of managing

routine work stress supports her disability claims and attacks the ALJ's decision to

not give this assessment great weight.  In determining the weight to give to Dr.

Porter's opinion, the ALJ noted that Dr. Porter "was likely influenced" by "several

allegations" Johnson made concerning her psychiatric history, none of which the

record corroborated.  (R. 22-23).  In particular, the ALJ found that nothing in the

record corroborated Johnson's report to Dr. Porter that she was waiting for an

inpatient bed at the psychiatric hospital at UAB.  (R. 23, 169).  In fact, Dr. Savage,

a psychologist at UAB who evaluated Johnson, opined that Johnson had grossly

exaggerated symptom reporting rendering her results invalid and that Johnson's

responses were "not indicative of current psychosis, acute depressive

symptomology, or suicidality." (R. 238). The ALJ noted that when Johnson reported to Dr. Porter that her doctor wanted to place her in an inpatient facility to observe her for medications, that allegation was wholly unsupported by the record and another example of Johnson's exaggeration of her symptoms. (R. 22).

Based on this court's review of the record, it is clear that the ALJ's decision to assign significant weight to the opinions of Drs. Rankart, Rogers, Savage, Beidleman, while excluding Dr. Porter's opinion that Johnson was unable to work, was consistent with the medical record and not evidence of error. (R. 23). Therefore, substantial evidence supports the ALJ's decision to only give partial weight to Dr. Porter's findings.

D.    <u>Alleged failure to develop the record to clarify inconsistencies by re-contacting consulting physician or with medical expert</u>

Finally, Johnson contends that the ALJ's RFC findings were not based on substantial evidence since the ALJ purportedly failed to fully develop the record by obtaining a medical expert to examine or review the record or by re-contacting "any of the treating or consultative sources." Doc. 8 at 11-12. The court disagrees.

*i. Alleged failure to re-contact any of the treating or consultative sources for clarification of the medical record*

As to Johnson's contention that "the ALJ could have obtained clarification from any of the treating or consultative sources" to resolve any insufficiencies or

conflicts in the record, doc. 8 at 11, the ALJ is only obligated to obtain clarification when a consultative physician's report is "inadequate or incomplete" such that the ALJ cannot make an informed decision regarding whether a claimant is disabled. *See Davison v. Astrue*, 370 Fed.App'x 995, 997 (11th Cir. 2010); *Vesty v. Astrue*, 353 Fed.App'x 219, 225 (11th Cir. 2009);  20 C.F.R. § 416.919p(a)-(b).  In such a case, the ALJ must attempt to develop the record by contacting the treating or consultative physician to determine whether the required information is available. *See id.*

In Johnson's case, however, the reports of the consultative examiners, along with Ms. Harper's treatment notes and Dr. Rankart's reviewing opinion, constituted a sufficiently complete record from which the ALJ could determine Johnson's disability.  Specifically, the doctors determined Johnson's chief complaints, reviewed Johnson's history and her resulting hospitalizations, reviewed the impact the alleged illnesses had on Johnson's activities, conducted laboratory tests and reviewed the results, and reported their diagnoses.  *See*  (R. 169, 174, 180, 237, 243, 312, 316).  The record was sufficient and required no further development.

### ii. Alleged failure to obtain medical expert testimony

Alternatively, Johnson contends that the ALJ "could have utilized a medical expert to assist him with resolving any insufficiencies or conflicts in the record."

Doc. 8 at 11.  While an ALJ "has a basic duty to develop a full and fair record,"
*Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003), the ALJ is not obligated
to automatically obtain testimony from a medical expert.  Rather, the ALJ "*may* ask
for and consider the opinion of a medical . . . expert concerning whether ...[a
claimant's] impairment(s) could reasonably be expected to produce [his or her]
alleged symptoms."  20 C.F.R. § 404.1529 (emphasis added).  Critically, the ALJ is
not required to order additional medical opinion when, as here, the record contains
sufficient evidence for the ALJ to make a disability determination.  *Ingram v.
Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citation omitted).
Indeed, the ALJ considered Johnson's entire medical record available, which
included reports from five physicians and a therapist, to find that Johnson is not
disabled.  Based on the extensive medical reports available, the ALJ developed a
full and fair record in Johnson's case.

Overall, the ALJ held that "[Johnson] simply alleges a greater degree of
disability than is warranted by objective evidence."  (R. 23).  Based on this court's
review of the record, the findings the ALJ made concerning his evaluation of the
medical reports were sufficiently extensive for the ALJ to make a RFC
determination and to find that Johnson was not disabled.  Accordingly, the ALJ
committed no error by failing to obtain a medical expert's opinion.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Johnson is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

**Done** the 29th day of October, 2012.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE